IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND
Civil Division

| | |
|---|---|
| SHADE POPOOLA<br>3808 Gateway Terrace<br>Burtonsville, Maryland 20866<br><br>and<br><br>CINDY J. BENNETT<br>502 East 6th Avenue<br>Ranson, West Virginia 25438<br><br>               Plaintiffs,<br><br>v.<br><br>MD-INDIVIDUAL PRACTICE<br>ASSOCIATION, INC.,<br>t/a M.D. IPA,<br><br>and<br><br>OPTIMUM CHOICE, INC.,<br><br>and<br><br>MAMSI LIFE AND HEALTH INSURANCE<br>COMPANY,<br><br>               Defendants. | Civil No. 211348-V<br>Judge Louise G. Scrivener<br><br>FIRST AMENDED COMPLAINT<br>AND JURY DEMAND |

NOW COME Plaintiffs, Shade Popoola and Cindy J. Bennett (together, the "Named Plaintiffs"), on their own behalf and on behalf of the Class defined herein, by and through their attorneys, Robert K. Jenner and Janet, Willoughby, Gershon, Getz & Jenner, LLC; Bruce M. Plaxen and Plaxen & Adler, P.A.; Kieron F. Quinn and Quinn, Gordon & Wolf, LLP; and, F. Paul Bland, Jr. and Trial Lawyers for Public Justice, and states as follows:

## PREAMBLE

This is a Complaint against defendants MD-Individual Practice Association, Inc. ("MD-IPA"), Optimum Choice, Inc. ("OCI"), and MAMSI, (collectively, the "Defendants"), for violations of statutory and common law obligations. At the relevant time, the Named Plaintiffs were members and insureds of Defendants. This Complaint challenges Defendants' practice of claiming and receiving funds prior to June 1, 2000, from its members and insureds pursuant to asserted liens against and subrogation interest in monies that its members and insureds received from third parties or from Personal Injury Protection carriers related to injuries received at the hands of third parties ("PIP Recoveries").

## PARTIES

1. Named Plaintiff, Shade Popoola, is a Maryland citizen residing at 3808 Gateway Terrace, Burtonsville, Montgomery County, Maryland.

2. From 1995 through 1998, the time period relevant to this case, Ms. Popoola contracted with MD-IPA for health insurance.

3. From 1995 through 1998, Ms. Popoola was employed by Adventist Home Health Services, a non-profit health care organization owned by the Seventh Day Adventist Church.

4. Named Plaintiff, Cindy J. Bennett, is a West Virginia citizen residing at 502 East 6th Avenue, Ranson, West Virginia.

5. From 1995 through 1998, the time period relevant to this case, Ms. Bennett, then known by her maiden name, Cindy J. Miller, contracted with OCI for health insurance.

6. During that time, Ms. Bennett was employed by First Nationwide Mortgage, a private corporation located at 5280 Corporate Drive, Frederick, Maryland.

7. Defendant MD-IPA is a health maintenance organization ("HMO") doing business in Maryland pursuant to Md. Health-Gen. Code Ann. §19-701, *et seq*. MD-IPA is a Maryland corporation with its principal place of business located at 6 Symphony Woods Court, Silver Spring, Maryland 20901.

8. Defendant OCI is an HMO doing business in Maryland pursuant to Md. Health-Gen. Code Ann. §19-701, *et seq*. OCI is a Maryland corporation with its principal place of business located at 451 Hungerford Drive, Suite 700, Rockville, Maryland 20850.

9. Defendant MAMSI is an HMO doing business in Maryland pursuant to Md. Health-Gen. Code Ann. §19-701, *et seq*. MAMSI is a Maryland corporation with its principal place of business located at 4 Taft Court, Baltimore, Maryland 20850.

10. On information and belief, MD-IPA, OCI, and MAMSI all function in an interrelated corporate structure such that funds paid to one entity are comingled with funds paid to another.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendant because the principal place of business of two corporate defendants is located in Montgomery County, Maryland.

12. Venue is proper in this Court pursuant to Md. Code Ann., Cts. & Jud. Proc. §6-201 because the defendants systematically and continually do business in Montgomery County, Maryland.

## STATEMENT OF FACTS

13. The contracts between Defendants and their respective members and insureds state that if a covered person is injured as a result of the act or omission of another person, the insurer would be reimbursed for the benefits provided in an amount not to exceed the amount of the recovery, or would be subrogated to the person's rights to the extent of the benefits received under the contract.

14. Prior to June 1, 2000, when Defendants learned that an insured or member had a liability claim against a third party, the general policy and practice was to send him/her a letter reminding the insured of the insurer's right of recovery for claims that relate to the accident or injury.

15. The provision in Defendants' contracts dealing with third party liability was illegal and improper under the laws of Maryland which regulate the business of insurance. It is clear, under the Maryland Code, that prior to June 1, 2000, Defendants were *not* entitled to claim a subrogation interest in or a lien against third party payments.

16. The illegality of Defendants' conduct was conclusively established by the Maryland Court of Appeal's ruling in *Riemer v. Columbia Medical Plan*, 358 Md. 222, 747 A.2d 677 (2000). The Court of Appeals stated as follows:

> We hold that generally, pursuant to sections 19-701(f) and 19-710(b) and (o) of the Health-General Article, and the general statutory scheme of Maryland's Health Maintenance Organization Act, an HMO may not pursue its members for restitution, reimbursement, or subrogation after the members have received a financial settlement from a third-party tortfeasor, any contract to the contrary notwithstanding. Restitution, reimbursement, and subrogation provisions are contrary to the express wording of subtitle 7 of Title 19 of the Health-general Article. Moreover, they are in conflict with the basis nature of HMOs based on subscriber per fee services. Under the basic concept of HMOs, a subscriber has no further obligation, primary or otherwise, beyond his or her fee for health services provided. Accordingly, there is in any event, nothing for an HMO to be subrogated to. The subscriber is not a primary debtor. The HMO, as to the fees paid health care providers, i.e., doctors, hospitals, etc., is the primary debtor.

*Riemer,* 358 Md. at 233.

17. The Court of Appeals further explained in *Riemer* that:

> Pursuant to section 19-701(f)(3), HMOs are only permitted to receive compensation from their subscribers in one of three forms: Co-payments, deductibles, and a pre-determined and prepaid periodic fee. When appellee asserted reimbursement and

4

subrogation claims against appellants and collected money from their respective settlements, it was clearly being compensated in a form not provided for in section 9-710[f](3).

*Riemer,* 358 Md. at 237.

The Court of Appeals further explained in *Riemer* that:

> One of the purposes of both 19-710(o) and 19-710(h) is consumer protection. If a member prepays the HMO for health care and receives what he or she has already paid for, a service received from a health care provider and covered by the health care contract, and the HMO does not pay the provider, the provider cannot then turn around and seek payment from the member.

*Riemer,* 358 Md. at 245.

18. Shortly after the Court of Appeals' decision was issued in *Riemer*, the legislature passed a bill seeking to retroactively overturn at least part of the *Riemer* decision.

19. On August 29, 2002, the Maryland Court of Appeals struck down the retroactive portion of this legislation in the case of *Dua v. Comcast, Harvey v. Kaiser*, 370 Md. 604, 805 A.2d 1061 (2002). Accordingly, for the time period relevant to this complaint and this case, the *Riemer* case governs the legality of Defendants' conduct under Maryland law.

20. In short, prior to June 1, 2000, Defendants regularly demanded and received sums from its subscribers and insureds that the Court of Appeals has held could not be legally demanded or received at that time, invoking a contractual provision that was flatly contrary to the laws of this State.

21. On or about September 3, 1998, Shade Popoola received the gross sum of $20,000.00 from State Farm to resolve a claim arising from an automobile collision that occurred on or about January 1, 1995. MD-IPA asserted a lien against this recovery. On or about September 3, 1998, Ms. Popoola, through her attorneys, paid the sum of $3,367.94 to OCI.

22. MD-IPA's action in asserting this lien and demanding money from Ms. Popoola under a claim of subrogation did not violate any term or provision in the language of her contract of insurance. Accordingly, Ms. Popoola does not ask this Court to enforce the terms of her benefits plan against MD-IPA. MD-IPA's action did violate the Maryland HMO Act, however, unjustly enriching Defendants.

23. The terms of Ms. Popoola's contract for insurance with Defendants have no bearing upon her claim for unjust enrichment, and thus Ms. Popoola does not ask this Court to interpret or apply those terms in this case. Instead, Ms. Popoola asks this Court to hold that Defendants' conduct in violating the Maryland HMO Act unjustly enriched Defendants.

24. On or about December 30, 1998, Ms. Bennett (then known as Cindy J. Miller) received the gross sum of $2,500.00 from State Farm to resolve a claim arising from an automobile collision that occurred on or about December 19, 1996. OCI asserted a lien against this recovery. On or about December 30, 1998, Ms. Bennett, through her attorneys, paid the sum of $532.62 to OCI.

25. OCI's action in asserting this lien and demanding money from Ms. Bennett under a claim of subrogation did not violate any term or provision in the language of her contract of insurance. Accordingly, Ms. Bennett does not ask this Court to enforce the terms of her benefits plan against OCI. OCI's action did violate the Maryland HMO Act, however, unjustly enriching Defendants.

26. The terms of Ms. Bennett's contract for insurance with Defendants have no bearing upon her claim for unjust enrichment, and thus Ms. Bennett does not ask this Court to interpret or apply those terms in this case. Instead, Ms. Bennett asks this Court to hold that Defendants' conduct in violating the Maryland HMO Act unjustly enriched Defendants.

## CLASS ACTION ALLEGATIONS

27. The Named Plaintiffs bring this action on behalf of a Class consisting of all persons who: (1) are or have been members or insureds of Defendants; (2) have received medical or health care treatment or services from Defendants; and (3) prior to June 1, 2000, were notified by Defendants that they held a lien against or a subrogation interest in any monies that the members or insureds had received or would receive from a third party.

28. Excluded from the Class are: (1) federal government employees who are "insureds" under federal employee health insurance contracts governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§8901, et seq; (2) those individuals who are or have ever been employees of Defendants and the spouses, parents, siblings and children of all such individuals; (3) Defendants' members or insureds who are or have been members of Defendants through ERISA benefit plans that are self-funded within the meaning of 28 U.S.C. Sect. 514(b)(2)(B); and (4) Defendants' members or insureds who received their insurance with Defendants through Medicare.

29. The Class consists, at a minimum, of hundreds of individuals, and is thus so numerous that joinder of all members is clearly impracticable.

30. There are questions of law and fact which are not only common to the Class, but also which predominate over any questions affecting only individual class members. The predominating questions include, but are not limited to:

    (a) whether Defendants' practice and policy of claiming a lien against and a subrogation interest in its insureds' and subscribers' recoveries from third parties or from PIP violated Maryland Health General Code Annotated § 19-701(f)(3) prior to June 1, 2000;

(b) whether Defendants' practice and policy of claiming a lien against and a subrogation interest in its insureds' and subscribers' recoveries from third parties or from PIP violated Maryland Health General Code Annotated § 19-701(o) prior to June 1, 2000;

(c) whether the Class members, by virtue of their payment of the asserted liens or subrogation claims prior to June 1, 2000, conferred a benefit upon Defendants;

(d) whether Defendants were aware of the receipt of payments from Class members prior to June 1, 2000 in response to their assertion of liens against and subrogation interests in Class members' recoveries from third parties;

(e) whether Defendants knowingly and affirmatively requested said payments prior to June 1, 2000;

(f) whether Defendants retained said payments;

(g) whether it would be inequitable to allow Defendants to retain these benefits;

(h) whether Defendants owed a duty of care to the Class by virtue of their position as health care providers and their superior knowledge of the law regarding HMO membership agreements;

(I) whether Defendants negligently asserted prior to June 1, 2000 that they were entitled to assert liens against and claim a subrogation interest in Class members' recoveries from third parties or from PIP; and,

(j) whether Defendants intended that the members of the Class would act on their assertions that they were entitled to assert liens against and claim a subrogation interest in Class members' recoveries from third parties or from PIP.

31. The claims of the Named Plaintiffs are typical of the claims of each member of the Class, within the meaning of Rule 2-241(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

32. The Named Plaintiffs are is committed to pursuing this action and have retained competent counsel experienced in class action litigation. Counsel for the Named Plaintiffs were counsel of record in the *Riemer* case, persevering for more than four years to win the landmark ruling of the Court of Appeals. Counsel for the Named Plaintiffs were also counsel of record in the *Harvey* case, persevering to win that landmark ruling of the Court of Appeals as well. The Named Plaintiffs will fairly and adequately represent the interests of the members of the class, within the meaning of Rule 2-231(a)(4).

33. Defendants' actions are generally applicable to the Class as a whole, and the Named Plaintiffs seek equitable remedies with respect to the Class as a whole, within the meaning of Rule 2-231(b)(2).

34. Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Rule 2-231(b)(3). The likelihood that individual members of the Class will prosecute separate actions is extremely remote due to the time and expense necessary to conduct such litigation. To the Named Plaintiffs' knowledge, no similar litigation is currently pending by other members of the Class. The Named Plaintiffs' counsel, highly experienced in class actions, foresee little difficulty in the management of this case as a class action.

## COUNT I
## UNJUST ENRICHMENT/MONEY HAD AND RECEIVED

35. The Named Plaintiffs adopt and incorporate all of the allegations of facts as set forth above as if fully set forth herein, and in addition, states as follows:

36. The Named Plaintiffs and the Class members, by virtue of their payment of the asserted liens and claimed subrogation interests prior to June 1, 2000, have conferred a benefit upon Defendants.

37. Defendants knowingly and affirmatively demanded said payments.

38. Defendants were aware of the receipt of said payments.

39. Defendants' requests for said payments prior to June 1, 2000, were in violation of Md. Health-Gen. Code Ann. §§ 19-701(f)(3) and 19-710(o). The illegality of Defendants's asserted subrogation interest is conclusively established by the Court of Appeal's ruling in *Riemer*.

40. Defendants were obligated to provide the medical services rendered to the Named Plaintiffs without asserting further charges such as subrogation claims by virtue of state law.

41. Defendants have retained said payments.

42. It would be inequitable to allow Defendants to retain these benefits because (a) the asserted liens and subrogation interests were improper and illegal under the Maryland Code; and (b) they had not provided any value to the Class in exchange for these payments, and had therefore been unjustly enriched.

## COUNT II
## NEGLIGENT MISREPRESENTATION

43. The Named Plaintiffs adopt and incorporate all of the allegations of facts as set forth above as if fully set forth herein.

44. Defendants owed a duty of care to the Named Plaintiffs and the Class by virtue of their position as health care provider and their superior knowledge of the law regarding HMO membership agreements.

45. Defendants negligently stated that they were entitled to assert liens against and claim a subrogation interest in the Named Plaintiffs' and the Class members' recoveries from third parties or from PIP.

46. Defendants intended that the Named Plaintiffs and the Class would act on these assertions and requests.

47. Defendants had knowledge that the Named Plaintiffs and the Class members would rely on their statements and that such statements, if wrong, would cause loss to the Named Plaintiffs and the Class.

48. The Named Plaintiffs and the Class justifiably relied on Defendants' representations.

49. In reliance on Defendants' statements, the Named Plaintiffs and the Class paid monies to Defendants as demanded by Defendants.

50. Defendants were prohibited by Md. Health-Gen. Code Ann. §§ 19-701(f)(3) and 19-701(o) from collecting such payments.

51. As a direct and proximate result of Defendants' misrepresentations relating to their purported subrogation interests, the Named Plaintiffs and the Class have suffered an economic loss.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs pray for the following relief:

A. Certification of the Class under Rule 2-231(c) of the Maryland Rules of Civil Procedure.

B. A declaration that Defendants have been unjustly enriched by their practice of claiming and receiving funds prior to June 1, 2000 from their members and insureds pursuant to asserted liens against and subrogation in monies that their members and insureds received from third parties or PIP Recoveries.

C. An award of equitable relief to Class members, including (i) an order requiring restitution to all members of the Class of all improperly claimed lien funds; and (ii) other equitable relief to which the Named Plaintiffs and the Class may be shown to be entitled.

D.  An award of compensatory damages to Class members for the losses they sustained due to Defendants' wrongful conduct.

E.  An award to the Named Plaintiffs and the Class of attorneys' fees, costs, disbursements and prejudgment interest.

F.  All other and further relief as the Court finds just, equitable and proper.

## JURY DEMAND

Named Plaintiffs demands a trial by jury on all issues of this cause so triable.

Respectfully submitted,

Robert K. Jenner
Steven A. Adelman
JANET, WILLOUGHBY, GERSHON,
  GETZ & JENNER, LLC
1829 Reisterstown Road, Ste. 320
Baltimore, Maryland 21208
(410) 653-3200

and

Bruce M. Plaxen
PLAXEN & ADLER, P.A.
Suite 420
10632 Little Patuxent Parkway
Columbia, Maryland  21044
(410) 730-7737

and

Kieron F. Quinn
Martin E. Wolf
QUINN, GORDON & WOLF, LLP
40 West Chesapeake Ave., No. 408
Baltimore, Maryland 21204
(410) 825-2300

and

F. Paul Bland, Jr.
TRIAL LAWYERS FOR PUBLIC JUSTICE
Suite 800
1717 Massachusetts Avenue, N.W.
Washington, D.C. 20036
(202) 797-8600

Attorneys for the Named Plaintiffs and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing First Amended Complaint and Jury Demand was served by first-class mail, postage prepaid, this 1st day of December, 2003, on:

Lawrence P. Fletcher-Hill, Esquire
GORDON, FEINBLATT
233 East Redwood Street
Baltimore, Maryland 21202

_/s/ [signature]_