IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | : |
| SHADE POPOOLA, et al. | |
| | : |
| | |
| v. | : Civil Action No. DKC 2003-3653 |
| | |
| | : |
| MD-INDIVIDUAL PRACTICE | |
| ASSOCIATION, INC., et al. | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this class action is the motion of Defendants M.D. Individual Practice Association ("MDIPA") and Optimum Choice, Inc. ("OCI") to dismiss Plaintiffs' Fourth Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) (paper no. 59). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants the motion as to MDIPA, but denies the motion as to OCI.

**I.  Background**

The history of this class action was recounted at length in this court's previous Memorandum Opinion, *see* paper no. 54, and most of it will not be repeated here. In the Order accompanying that Opinion, the court granted in part and denied in part Plaintiffs' motion for leave to amend, and denied without

prejudice their motion for class certification.  The court, reviewing the proposed third amended complaint, noted that

> to the extent that the third amended complaint seeks to assert, as federal claims, the previously asserted state law claims, with Miller substituted for Popoola, the motion to amend will be granted.
>
> It is not clear, however, whether the allegations in the motion to amend reflect simply the changes necessitated from converting the state law claims into ERISA-based claims or whether they are, as Defendants argue, expanding the original claims so greatly that they now incorporate claims not previously asserted in the earlier complaints. . . .  It is not clear how these changes are consistent with the class claims asserted previously in state court.  Nor is it clear how Plaintiffs can consider this new class to avoid the typicality and commonality problems previously cited by Judge Scriven[e]r.
>
> Finally, the third amended complaint seeks to add Pierro as a new plaintiff, but it is unclear what relationship she has with the defendants or the proposed subclasses and whether her claims were filed too late.  If Plaintiffs are seeking to add a new class representative on behalf an old class, tolling of the statute of limitations may be appropriate if the court were to find that Judge Scriven[e]r's denial of class certification was based not on the substantive claims but on the inadequacy of the named plaintiff.  *See McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380, 387-88 (3rd Cir. 2002) (discussing numerous cases holding the same). . . .

*Id*. at 9-10.  The court concluded:

> Amendment will not be permitted . . . to the extent that Plaintiffs seek to expand the class definition by adding new claims or new plaintiffs not related to the former claims. . . .  Plaintiffs will be required . . . to file a fourth amended complaint that more precisely defines the class; sets forth the relationship of each Plaintiff with the defendants, with the purported class members and with the proposed subclasses; confirms Plaintiffs' ability adequately to

> represent the interests of the class and act as named
> plaintiffs; and clarifies how the newly asserted class
> definition seeks to replead the state law claims as
> ERISA claims only and not to expand or add additional
> claims not previously asserted.

*Id.* at 11.  Plaintiffs timely filed the required fourth amended complaint.  Paper no. 56.  Defendants now move to dismiss.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v.*

*Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   The court must disregard the contrary allegations of the opposing party.   *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).   The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

     "In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint.   The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action."   *Abadian v. Lee,* 117 F.Supp.2d 481, 485 (D.Md. 2000) (citing *Biospherics, Inc., v. Forbes, Inc.,* 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd,* 151 F.3d 180 (4th Cir. 1998)).   When doing so, the court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleading."   *See* Fed.R.Civ.P. 12(b) ("If [on a 12(b)(6) motion to dismiss,] matters outside the pleading are

4

presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .”); *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998) (citing Rule 12(b)); *Luy v. Balt. Police Dep’t,* 326 F.Supp.2d 682, 688 (D.Md. 2004) ("The court may consider a document submitted by the defendant in support of a motion to dismiss, however, ‘[if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.’) (quoting *Am. Chiropractic Ass’n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004)).

## III. Analysis

Defendants make three arguments in favor of full or partial dismissal: first, that Plaintiffs’ amended complaint does not adequately address the issues raised by Judge Scrivener in her rejection of class certification; second, that Miller’s claims are time-barred; and third, that Pierro cannot pursue ERISA-based claims because she was not a member of an ERISA plan.  The court addresses first the validity of the named plaintiffs’ claims.

### A.   Pierro’s Claims

Plaintiffs admit that Plaintiff Pierro’s claims are barred because she was not a member of an ERISA plan, whereas both

counts of the complaint are predicated on participation in an ERISA plan.  Accordingly, Pierro's claims will be dismissed with prejudice.

**B.   Miller's Claims**

Defendants argue that Miller's claim, now as the lone named plaintiff, is also barred because the statute of limitations has run on her claim, which was not filed until more than four years after the date she made her subrogation payment to OCI. Defendant MDIPA also argues that Miller has no claim against MDIPA, as she paid a subrogation claim only to OCI and in fact has no connection at all to MDIPA.

Plaintiffs respond that the three year statute of limitations on Miller's claim against OCI was tolled by (1) the pendency of the class action, and (2) the court's stay of proceedings for some seventeen months.  Plaintiffs argue that Miller has a valid claim against MDIPA because that claim is "juridically linked" to her claim against OCI.

For the reasons explained below, the court finds that the statute of limitations tolled for Miller's claim against OCI. However, the court will decline to apply juridical link doctrine to  Miller, and therefore finds that Miller does not have standing to sue MDIPA.

1.    **Whether the Statute of Limitations Tolled for Miller's Claim Against OCI**

As to the pendency of the class action, Defendants recognize that, generally speaking, "the commencement of a class action suspends the applicable statute of limitations as to asserted members of the class who would have been parties had the suit been permitted to continue as a class action," *American Pipe and Constr. v. Utah,* 414 U.S. 538, 554 (1974), and that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied," at which point "class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354 (1983) (interpreting *American Pipe*).   Defendants, however, argue that this tolling does not apply when no named plaintiff has standing.  They assert that, here, it did not toll for Miller because during the entire period before the addition of Miller as a named plaintiff -- a period exceeding the three-year statute of limitations by over a year -- there was no named plaintiff with standing to sue OCI, as, Defendants continue, Popoola never had standing to sue OCI because her grievance was with MDPIA alone, and her interaction with OCI was mere accident.   Defendants dispute Plaintiffs' reliance on the

juridical link doctrine to furnish Miller with standing to sue MDIPA, noting that the doctrine has not been adopted by the Fourth Circuit.

Plaintiffs contend that (1) Popoola's standing is irrelevant because under *American Pipe*, contrary to Defendants' interpretation, the statute of limitations is tolled during the pendency of a class action regardless of whether a named plaintiff -- here, Popoola -- ever had standing; and (2) in any event, Popoola did, in fact, have standing to sue OCI because of the juridical link between OCI and MDIPA. Defendants, of course, argue that juridical link doctrine is as inapplicable to Popoola as it is to Miller.

Defendants argue essentially that, without a named plaintiff with standing to sue, the statute of limitations cannot be tolled. Plaintiffs and the court disagree. At least two courts addressing the issue have held the *American Pipe* rule to apply in cases where class action status is denied or terminated based upon the named plaintiff's lack of standing to maintain the class claims. *See Haas v. Pittsburgh Nat'l Bank,* 526 F.2d 1083, 1095-98 (3rd Cir. 1975); *Rose v. Ark. Valley Envtl. & Util. Auth.,* 562 F.Supp. 1180, 1190-94 (W.D.Mo. 1983) (citing *Haas*). Both noted the concerns raised in *American Pipe* that, if the statute of limitations were to run during the pendency period,

8

every individual class member would feel obligated to file a motion to intervene before the end of the period in order to preserve his or her rights, "depriv[ing] Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure."  414 U.S. at 553; *see Haas,* 526 F.2d at 1097; *Rose,* 562 F.Supp. at 1192.  Both noted that the *American Pipe* Court carefully considered, and found its decision consistent with, the twin purposes of statutes of limitations, namely, "ensuring essential fairness to defendants and . . . barring a plaintiff who 'has slept on his rights,'" 414 U.S. at 554 (quoting *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428 (1965)).  The Court held that the twin purposes

> are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.  Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

414 U.S. at 554-55; *Crown v. Parker*, 462 U.S. 345, 352-53 (1983) (citing *American Pipe*); see *Haas,* 526 F.2d at 1097 & n.19; *Rose,* 562 F.Supp. at 1192.

The relevant facts in *Haas* are similar to those here. Plaintiff Haas filed a complaint against three banks on November 13, 1972, alleging violations of the National Bank Act regarding the way that service charges and balances were calculated on credit cards issued by the banks. *Haas,* 526 F.2d at 1085.  On January 21, 1974, the district court determined that Haas could not represent plaintiffs against one of the defendants, Equibank, because she did not hold an Equibank credit card. *Id*. Furthermore, the district court determined that certification was inappropriate and ordered summary judgment for Equibank unless a plaintiff with standing against that defendant could be added to the complaint. *Id.* at 1095.  On February 19, 1974, the complaint was so amended, but the district court subsequently found that the claim against Equibank was time-barred. *Id*. at 1096.  The Third Circuit reversed on this question, agreeing with plaintiffs that because the new named plaintiff, Mitchell, "was timely added after the district court determined that the class of Equibank cardholders could not be represented by Haas, the amendment which added Mitchell 'relates bank' to the initial filing of the complaint . . . and therefore plaintiffs' claims against Equibank are not time-barred . . . ." *Id.*  The court found that the plaintiffs'

> timely action against all three banks provided
> Equibank with notice within the statutory period of
> the substantial nature of the claims against which
> they would be required to defend and also "the number
> and generic identities of the potential plaintiffs."
> These plaintiffs were in existence at the time the
> action was originally brought and were described as
> claimants in the complaint. The only change
> effectuated by the district court's order was the
> prompt addition of a nominal plaintiff who held an
> Equibank card.

*Id.* at 1097 (quoting *American Pipe*, 414 U.S. at 555).

In *Rose*, another court addressed the same issue, with more emphatic attention to the notice concern raised in *American Pipe*. The court began by noting that "a number of lower federal courts have, since the decision in *American Pipe*, applied its rule in a variety of situations where class action status was denied or terminated" for virtually the entire range of possible reasons: lack of numerosity, inadequate representation, commonality, typicality, untimeliness, failure to meet the requirements of Rule 23(b)(2) or 23(b)(3), withdrawal of class representative, and, in *Haas*, standing. 562 F.Supp. at 1192 (citing cases). A defendant, however, suggested that lack of standing is different than other reasons for denial of class certification in that "a class action commenced by one who lacks standing cannot logically function to toll a statute of limitations." *Id.* at 1193. The court's reasoning merits quotation in full:

[I]t can hardly be said that a suit commenced by one who lacks standing is in any literal sense a "nonexistent" suit.   It may be a defective suit, subject to a motion to dismiss, or perhaps even to the court's dismissal *sua sponte*, but it is for all that no less the judicial assertion of a claim, functioning to give a defendant notice of whatever causes of action are asserted therein.   And where such a claim is asserted by way of a class action, and in fact covers the causes of action which a class member himself could properly bring, a defendant has received just as much notice as might have been imparted if the proceeding had been instituted by that class member. In fact, if one were to deal only in generalities, a class action which is denied or terminated because the class representative lacks "standing" might often be more likely to give a defendant actual notice of the claims of individual class members than one where denial or termination was based upon a lack of "typicality" or "commonality."

Nor, in my view, is there anything singular or peculiar with respect to "standing" that would generally prevent application of the other consideration expressed in *American Pipe* -- the concern that where the determination to disallow the class action is made upon "subtle factors," a rule "requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions [to intervene]." Standing questions are one with which both skilled counsel and skilled courts sometimes experience considerable difficulty, even after extensive discovery and when intimately acquainted with the facts, as vividly demonstrated by the history of the present litigation itself.   I can see no more reason, as a general matter, to require a passive class member to anticipate the existence of and ultimate ruling upon that question than to require him to do so with respect to questions of "numerosity," "commonality" or "typicality."

I conclude, accordingly, that the fact that a class action is disallowed because the class representative lacks "standing" does not, *per se,* prevent application of the *American Pipe* tolling rule. *Haas v. Pittsburgh National Bank, supra.*   Instead, I

suggest again that the appropriate focus of inquiry should be upon the extent and character of the notice of the later individual claims which the defendant actually received from the class action.

*Id.*

Here, as in *Haas* and *Rose*, Defendants were, before the statute of limitations would otherwise have expired, plainly on sufficient notice of the claims against them. Miller's claims are virtually identical to Popoola's, and "the number and generic identities of the potential plaintiffs" have been plain to Defendants since the filing of the initial complaint. This court therefore concludes that "the commencement of the original class action by [Popoola] tolled the statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action," including Miller. *Haas*, 526 F.2d at 1098.

Defendants protest that "Plaintiffs 'may not use the procedural device of a class action to bootstrap [themselves] into standing [they] lack[]," *Miller v. Pac. Shore Funding, Inc.,* 224 F.Supp.2d 977, 996 (D.Md. 2002) (quoting *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 694, 695 (E.D.Pa. 1973), and it is true that "[i]n a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants," *Miller,* 224 F.Supp.2d at

996, but from those truths it does not follow that the statute of limitations should not be tolled to allow a party with standing to be named.

As grounds for declining to toll the statute of limitations, Defendants point principally to *In re Crazy Eddie Sec. Litig.,* 747 F.Supp. 850 (E.D.N.Y. 1990), which in turn relied heavily upon *Korwek v. Hunt,* 827 F.2d 874 (2nd Cir. 1987).  In *Korwek*, after a class's certification was denied, the Second Circuit found that other analogous cases had consistently held that "the *American Pipe* tolling rule does not apply to permit putative class members to file a *subsequent* class action" to prevent putative class members from "piggyback[ing] one class action onto another and thus toll[ing] the statute of limitations indefinitely."  *Id.* at 877-78 (citing cases) (italics added). The court concluded: "we hold that the tolling doctrine enunciated in *American Pipe* does not apply to permit a plaintiff to file a subsequent class action following a definitive determination of the inappropriateness of class certification." In *Crazy Eddie*, too, a plaintiff filed a second, separate complaint, and the court held that "the [Korwek] court's reasoning is equally applicable to a class action brought *after a previous class action has been dismissed* for lack of standing. . . .  There appears to be no good reason to encourage the

14

*bringing* of a suit merely to extend the period in which to find a class representative." 747 F.Supp. at 856 (italics added).

By now it should be clear that *Korwek* and *Crazy Eddie* are inapposite for two reasons: first, because Miller did not file a subsequent class action, but was added as a named plaintiff in the instant, pending case; and second, because there has been no "definitive" denial of class certification, let alone dismissal. Indeed, Plaintiffs' motion for class certification was denied without prejudice, and Plaintiffs were ordered to submit an amended complaint in order to clarify for the court the very issues that will dictate whether the class can be certified. The court therefore rejects these arguments against tolling the statute of limitations.

Because the statute of limitations tolled for Miller during the pendency of the class action, the court need not consider whether the court's seventeen month stay also served to toll, or, for this issue, whether the juridical link doctrine can supply standing.

## 2.  Miller's Standing Against MDIPA

Although Miller can sue OCI, Plaintiffs cannot use that fact as the basis for their action against MDIPA. As noted above, "[i]n a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of

the defendants." *Miller,* 224 F.Supp.2d at 996.  Miller has not done so here:  Her only connection to MDIPA is this lawsuit. The complaint does not allege any facts to show that Miller has standing to sue MDIPA.

Plaintiffs' sole argument tying Miller to MDIPA is that Miller benefits from the "juridical link" between OCI and MDIPA, but, as will be explained, the court will not apply juridical link doctrine to this case.

Juridical link doctrine "answers the question of whether two defendants are sufficiently linked so that a plaintiff with a cause of action against only [one defendant] can also sue the other defendant under the guise of class certification." *In re Eaton Vance Corp. Sec. Litig.,* 220 F.R.D. 162, 165 (D.Mass. 2004).  Plaintiffs assert that, because OCI and MDIPA are common subsidiaries of the same corporation and because they share common practices and policies, they are related "in a manner that suggests a single resolution would be expeditious." *La Mar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 466 (9th Cir. 1973). Plaintiffs cite a line of cases relying upon the *La Mar* language to advocate a relaxation of Article III standing requirements in such situations.  *See, e.g., Alves v. Harvard Pilgrim Health Care Inc.,* 204 F.Supp.2d 198 (D.Mass. 2002); *Bromley v. Mich. Educ. Ass'n-NEA,* 178 F.R.D. 148 (E.D.Mich. 1998) (citing

16

*Thompson v. Board of Educ.,* 709 F.2d 1200 (6th Cir. 1983));
*Heffler v. U.S. Fid. & Guar. Ins. Co.,* 1992 U.S. Dist. LEXIS
3090, 1992 WL 50095 (E.D.Pa. March 10, 1992); *Thillens, Inc. v.
Cmty. Currency Exch. Assoc.,* 97 F.R.D. 668 (N.D.Ill. 1983).

The Fourth Circuit has addressed juridical link doctrine
only tangentially, in a single, unpublished opinion, *Faircloth
v. Fin. Asset Sec. Corp. Mego Mortgage Home Owner Loan Trust,* 87
Fed.Appx. 314 (4th Cir. 2004), stating ambiguously that the
Circuit "ha[s] yet to recognize" the doctrine, and addressing
its merit only briefly before finding that, "even were we to
recognize the juridical link doctrine as a basis for standing,
[plaintiff] could not invoke it successfully." Another district
court in this circuit rejected its application, stating that it
could only be used to confer standing in cases where there
exists "either a contractual obligation among all defendants, or
a state or local statute which requires common action by
defendants." *Dash v. FirstPlus Home Loan Trust* 1996-2, 248
F.Supp.2d 489 (M.D.N.C. 2003).

This court is equally skeptical. "The short answer to this
argument is that the juridical links doctrine has no bearing on
the issue of standing. Instead, it provides an exception to the
Rule 23(a) requirement of typicality and/or adequacy of
representation in class actions against multiple defendants."

17

*Matte v. Sunshine Mobile Homes, Inc.,* 270 F.Supp.2d 805, 822

(W.D.La. 2003) (internal quotation marks omitted).  As explained

in *Eaton Vance*,

> In its infancy, the doctrine had nothing to do with
> Article III  standing.  In fact, *La Mar* was a case
> where standing was not at issue because the Ninth
> Circuit assumed it to exist.  *See id.* at 464.  Rather,
> the juridical link doctrine was used to determine
> whether named plaintiffs were typical of the class and
> could fairly and adequately protect class interests as
> required by Rule 23.  *See id.* at 465-66.  The crux of
> the doctrine held that "a plaintiff who has no cause
> of action against the defendant can not [represent]
> those who do have such causes of action." *Id.* at 466.
> The Ninth Circuit, however, suggested that there were
> two exceptions to this rule: one for situations where
> the named plaintiff's injuries "are the result of a
> conspiracy   or   concerted   schemes   between   the
> defendants," and another for situations where it would
> be "expeditious" to combine the defendants into one
> action because they are "juridically related." *Id.* at
> 466.  Hence, the juridical link doctrine was born.
> Over time, the doctrine came to be used not only in
> the class certification analysis under Rule 23, but
> also in the standing analysis under Article III.  *See,
> e.g.,* [*Alves*]*,* 204 F.Supp.2d [at] 205.

220 F.R.D. at 169-70 (parenthetical omitted).  Some courts seem

to read *La Mar* uncritically, applying juridical link doctrine to

questions of  standing  rather  than  limiting  it  to  Rule  23

analysis  as  the  *La Mar*  court  did.   *See, e.g., Alves,* 204

F.Supp.2d  at  205; *Bromley,*  178  F.R.D.  at  162-63  (citing

*Thompson,* 709 F.2d at 1204-05); *Heffler,* 1992 U.S. Dist. LEXIS

3090 at *10-11, 1992 WL 50095 at *4; *Thillens,* 97 F.R.D. at 676.

This court, however, shares Judge Harrington's concern that while juridical link doctrine may be "expeditious," "Article III standing . . . does not often bend to expediency and the Supreme Court has warned against such an approach," *Eaton Vance*, 220 F.R.D. at 170 (citing *Raines v. Byrd,* 521 U.S. 811, 820 (1997) (Article III standing analysis cannot be abandoned "for the sake of convenience and efficiency")), and agrees that "the juridical link doctrine should be confined to an analysis of Rule 23(a)." *Id.* at 171; *see Matte,* 270 F.Supp.2d at 822; *see, e.g., Barker v. FSC Sec. Corp.,* 133 F.R.D. 548, 553 (W.D.Ark. 1989) (applying *La Mar* exceptions to find commonality under Rule 23, not standing) (where defendants argued that "individualized issues predominate as to plaintiffs' negligent supervision claim . . . [so] not all class members have claims against every defendant," court found that "the defendants are juridically linked, and that plaintiffs' negligent supervision claim presents common issues of law and fact").

In the other cases cited by Plaintiffs, it is clear that more than mere common ownership provides the basis for overriding the long-standing requirement that a plaintiff's injury be "traceable to the challenged action of the defendant . . . ." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 563 (1992). In *Payton v. County of Kane,* 308 F.3d 673 (7th Cir.

2002), the Seventh Circuit found that a suit against nineteen counties brought by a class naming only two plaintiffs, with claims against only two of the counties, could proceed because "[t]hese putative representatives were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class." *Id.* at 682.  The court, citing *Fallick v. Nationwide Mut. Ins. Co.,* 162 F.3d 410 (6th Cir. 1998) and *Moore v. Comfed Sav. Bank,* 908 F.2d 834 (11th Cir. 1990), noted that "[p]ost-*LaMar* [sic] cases from other courts have suggested that if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the named class representative did not have direct contact."  308 F.3d at 679 (italics omitted).  The court also observed that "there are cases where appropriate relief may only be obtained through one broad suit, and it will be impossible to find a named plaintiff to match each defendant." *Id.* at 681.

In fact, *Payton's* reliance on *Fallick* is puzzling.  In *Fallick*, the court held that a plaintiff could represent a class suing ERISA plans that were all administered by the same defendant.  162 F.3d at 424.  As such, there was no standing question; after all, a plaintiff sues a defendant, not a plan.

20

Rather, the question in *Fallick* was whether plaintiff could, in accordance with Rule 23, adequately represent unnamed plaintiffs with claims against a plan other than the one of which the named plaintiff was a member.  *See id.* at 421-24.  Here, of course, Miller wants to sue a defendant against whom she has no claim.

*Moore* is equally unconvincing, at least as regards this case.  The *Moore* court came to no conclusion as to the applicability of juridical link doctrine to its case; rather, the issue, which arose out of an objection by the appellant defendants that they should never have been joined into the case, was decided on the basis of the court's interpretation of Rule 19.  *See id.* at 838-39.  Furthermore, in discussing the juridical link question (before abandoning it in favor of Rule 19 analysis), the *Moore* court, after noting the exception language in *La Mar*, observed approvingly that the district court had stated that "[o]ther named plaintiffs could be supplied to match with each named defendant, but it would be unwieldy to do so. . . .  The case is simpler and more economical with the class of plaintiffs and the named defendants" and that "[n]o court would want to have 644 separate lawsuits."  *Id.* at 838. Here, of course, it could hardly be called "unwieldy" to ask that Plaintiffs name representatives who have cognizable claims against each of the two defendants.

21

For these reasons, the court finds that Miller has no standing to sue MDIPA.

## C. Class Certification

Defendants also argue that Plaintiffs' amended complaint does not cure the defects in class definition that compelled Judge Scrivener to deny class certification for lack of typicality and commonality. Upon initial inspection, the court disagrees, but the question of class certification is not properly before the court at this time. Plaintiffs note correctly that analysis of class compliance with Rule 23 is not appropriately undertaken on a motion to dismiss, but should be addressed in a motion pursuant to Rule 23(c)(1)(A). *See* 7B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1798, at 226-27 & n.23 (3rd ed. 2005) (citing cases). As to Defendants' motion to dismiss, Plaintiffs need only show, at this juncture, that they have stated a cause of action. *See Halverson v. Convenient Food Mart, Inc.,* 458 F.2d 927, 932 (7th Cir. 1972) ("(I)n determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met.").

## IV. Conclusion

As Pierro's claims will be dismissed, Popoola is no longer a class representative, and Miller has no standing to sue MDIPA, as discussed *supra*, currently there is no named plaintiff with a claim against MDIPA.  Counsel has had ample opportunity -- indeed, years -- to identify a representative of those cognizably injured by MDIPA, and has not done so.  Accordingly, the court will dismiss with prejudice the class claims against MDIPA.  In fairness to MDIPA, *see American Pipe,* 414 U.S. at 554 (statute of limitations exist to "ensur[e] essential fairness to defendants and . . . bar[] a plaintiff who 'has slept on his rights'"), the court will exercise its discretion not to permit amendment of the complaint *ad nauseum* until a plaintiff with proper standing is discovered.  *See* Fed.R.Civ.P. 15(a).

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part:  The court will dismiss with prejudice all claims against MDIPA, but allow the class claims against OCI to proceed.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

August 16, 2005


23