IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CINDY J. MILLER                        :

                                       :

    v.                                 :  Civil Action No. DKC 2003-3653

                                       :

OPTIMUM CHOICE, INC.                   :

                                       :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this case is Plaintiff's motion for class certification. (Paper 75). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants Plaintiff's motion for class certification.

## I.  Background

Although the court has previously recounted the history of this case in detail, (paper 54), some repetition is helpful in order to understand the current posture of the case. This action initially was filed in the Circuit Court for Montgomery County, Maryland, on May 31, 2000, with Shade Popoola appearing as the only named plaintiff. The original complaint alleged state law causes of action based on the subrogation rights of a health maintenance organization ("HMO") when a member or insured obtains recovery from a third-party tortfeasor for injuries giving rise to medical

expenses.[1]   The named defendants were M.D. Individual Practice Association ("MDIPA"), Optimum Choice, Inc. ("OCI"), and Mamsi Life and Health Insurance Company ("MAMSI").   Defendants removed the case to this court, where it was stayed at Ms. Popoola's request pending a decision of the United States Court of Appeals for the Fourth Circuit involving related issues.   On February 4, 2003, the case was remanded to state court, where Ms. Popoola moved to certify the plaintiff class.   At a hearing on September 30, 2003, conducted by Judge Louise G. Scrivener, the motion was denied based on the court's finding that Ms. Popoola was a member of a plan that included a combination of HMO coverage provided by MDIPA and indemnity insurance coverage (i.e., point of service ("POS") coverage) provided by MAMSI.   Judge Scrivener reasoned that because subrogation was impermissible only as to Maryland HMOs, and not to indemnity health insurers, the court would ultimately be required

---

[1] In *Riemer v. Columbia Med. Plan, Inc.*, 358 Md. 222 (2000), the Court of Appeals of Maryland interpreted the Maryland HMO Act, Md. Code Ann., Health-Gen. §§ 19-701 *et seq.*, to prohibit HMOs from collecting reimbursement from an HMO member who received damages from a third-party tortfeasor.   Shortly following the decision, the Maryland legislature amended the law to provide that an HMO is authorized to pursue subrogation claims against its members.   The legislation was made effective June 1, 2000, and, although it was initially intended to apply retroactively, the Court of Appeals struck down the retroactivity provision because it violated the Maryland Constitution and the Maryland Declaration of Rights.   *See Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 618 (2002). Accordingly, the prohibition against subrogation remained effective until June 1, 2000.   *See Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278, 281 (4th Cir. 2003), *cert. denied*, 540 U.S. 1073 (2003) (describing the history of the subrogation prohibition).

to determine which part of the plan provided coverage, thereby resulting in too many individual issues predominating over the common issues of the class. Judge Scrivener gave Plaintiff sixty days within which to add a plaintiff who would avoid the problems the court had indicated.

On December 1, 2003, the complaint was amended to add Cindy J. Miller as a class representative.[2] Ms. Miller was a member of OCI, an HMO, through her employer. She was injured on December 19, 1996, in an automobile accident, for which she received treatment paid for by OCI. On or about September 3, 1999, after receiving recovery from the third-party tortfeasor's insurance, Ms. Miller paid $532.62 to OCI in response to a subrogation lien OCI filed against her recovery.[3] (Paper 49, at 3). Plaintiffs (Popoola and Miller) filed a new motion for class certification. On the basis of Ms. Miller's claims, Defendants once again removed to this court on December 24, 2003, contending that the complaint asserts a federal question because Ms. Miller's claims seek to clarify and/or

---

[2] Ms. Miller was originally added using her maiden name, Bennett.

[3] There are some inconsistencies in the record with regard to the date of Ms. Miller's payment. As noted, the initial motion for class certification (paper 49) listed September 3, 1999, as the date of payment. The first amended complaint (paper 48) states that payment was made on December 30, 1998. The fourth amended complaint (paper 56), currently pending, does not provide a specific date.

enforce rights under a plan covered by the Employment Retirement Income Security Act of 1974 ("ERISA").[4]

On September 7, 2004, this court issued an Order granting in part and denying in part Plaintiffs' motion to amend their complaint for the third time, and denying without prejudice their motion for class certification.   The court directed Plaintiffs to file a fourth amended complaint that:

> [M]ore precisely defines the class; sets forth the relationship of each Plaintiff with the defendants, with the purported class members and with the proposed subclasses; confirms Plaintiff's ability adequately to represent the interests of the class and act as named plaintiffs; and clarifies how the newly asserted class definition seeks to replead the state law claims as ERISA claims only and not to expand or add additional claims not previously asserted.

(Paper 54, at 11).   Plaintiffs timely filed a fourth amended complaint, which dropped Ms. Popoola as a claimant, and named Ms. Miller and Connie S. Pierro as Plaintiffs.   (Paper 56).   In the fourth amended complaint, Ms. Miller and Ms. Pierro alleged that Defendant violated ERISA by (1) denying benefits due under an ERISA plan, and (2) violating the terms of an ERISA plan.   On April 16,

---

[4] In *Singh*, 335 F.3d at 283-84, the Fourth Circuit held that the Maryland HMO Act was a state law regulating insurance and thus was "saved" from pre-emption by Section 514(b) of ERISA.   *See* 29 U.S.C. § 1144(b)(2)(A) (excepting from pre-emption any state law, which, among other things, regulates insurance).   Instead, the court found that the state HMO law supplied a substantive term of the ERISA plan, and that the proper avenue of relief was to assert a claim pursuant to § 502(a) of ERISA to enforce the terms of the plan.   *Id.* at 289.

2005, the court issued an Order granting in part Defendants' motion to dismiss.  (Paper 69).  The court dismissed with prejudice Ms. Pierro's claims and class claims against MDIPA.  Moreover, the court held that Ms. Miller did not have standing to assert a claim against MDIPA.  Accordingly, the only remaining parties in this action are Ms. Miller and OCI.  On September 30, 2005, Ms. Miller filed a motion for class certification pursuant to Fed.R.Civ.P. 23. (Paper 75).

## II.  Class Certification

Plaintiff asks the court to certify the following class:

> All persons who (1) are or have been members or insureds of Optimum Choice, Inc.; (2) have received medical or health care treatment or services from Optimum Choice, Inc; and (3) prior to June 1, 2000, paid a subrogation claim (however described) to Optimum Choice, Inc. in satisfaction of a lien against or a subrogation interest of Optimum Choice, Inc. in any monies that the members or insureds had received or would receive from a third party.

> Excluded from the Class are: (1) federal government employees who are "insureds" under federal employee health insurance contracts governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901, *et. seq*; (2) those individuals who are or have ever been employees of Optimum Choice, Inc. and the spouses, parents, siblings and children of all such individuals; (3) Optimum Choice, Inc. members or insureds who are or have been members of Optimum Choice, Inc. through ERISA benefit plans that are self-funded within the meaning of 28 U.S.C. Sect. 514(b)(2)(B); and (4) Optimum Choice, Inc. members or insureds who received their insurance with Optimum Choice, Inc. through Medicare.

(Paper 75, at 4-5).

In order for the court to certify the proposed class,
Plaintiff must meet all four requirements of Fed.R.Civ.P. 23(a),
and at least one of the requirements of Fed.R.Civ.P. 23(b). *Amchem
Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). The burden
of establishing class status is on Plaintiff, *Bullock v. Bd. of
Educ. of Montgomery County*, 210 F.R.D. 556, 558 (D.Md. 2002), and
"[t]he court has a duty to undertake a 'rigorous analysis'" to
ensure that the requirements of class certification have been met.
*Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D.Md.
1997) (citing *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147,
161 (1982)). A district court may not evaluate the merits of a
plaintiff's case, but "sometimes it may be necessary for the court
to probe behind the pleadings before coming to rest on the
certification question." *Falcon*, 457 U.S. at 160. As the Fourth
Circuit has noted:

> If it were appropriate for a court simply to
> accept the allegations of a complaint at face
> value in making class action findings, every
> complaint asserting the requirements of Rule
> 23(a) or (b) would automatically lead to a
> certification order, frustrating the district
> court's responsibilities for taking a "close
> look" at relevant matters, *Amchem,* 521 U.S. at
> 615, 117 S.Ct. 2231, for conducting a
> "rigorous analysis" of such matters, *Falcon*,
> 457 U.S. at 161, 102 S.Ct. 2364, and for
> making "findings" that the requirements of
> Rule 23 have been satisfied . . . . "*It is
> appropriate to conduct controlled discovery
> into the 'merits,' limited to those aspects*

6

> *relevant to making the certification decision*
> *on an informed basis."*

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004)
(quoting Fed.R.Civ.P. 23 advisory committee's note to 2003
amendments) (emphasis in original).

## A. Rule 23(a)

The four requirements of Rule 23(a) are commonly referred to
as numerosity, commonality, typicality, and adequacy of
representation. The court finds that Plaintiff satisfies all four
requirements.

## 1. Numerosity

"In order to be certified as a class under Rule 23(a)(1), a
class must be so numerous that joinder of all members is
impracticable." *Bullock*, 210 F.R.D. at 558. The court must use
its practical judgment in light of the facts presented; there is no
bright line rule for determining whether the numerosity element is
met. *Id.* "Practicability of joinder depends on factors such as
the size of the class, ease of identifying its numbers and
determining their addresses, facility of making service on them if
joined and their geographic dispersion." *Hewlett*, 185 F.R.D. at
215. Plaintiff contends that Defendant disclosed in discovery that
from May 1997 through May 2000, it received subrogation payments
from 1,509 members and therefore that the numerosity element is
met. Defendant does not dispute this assertion. The court agrees,

and finds that the joinder of all affected parties would be impracticable and that Plaintiff satisfies the numerosity requirement.

## 2. Commonality

Rule 23(a)(2) specifies that in order for class certification, there must be "questions of law or fact common to the class." The commonality "inquiry is not whether common questions of law or fact predominate, but only whether such questions exist."[5] *Hewlett*, 185 F.R.D. at 216 (citations omitted). Plaintiff seeks to certify a class of individuals who are or were members or insureds of OCI, received health care treatment or services from OCI, and, prior to June 1, 2000, paid a subrogation claim to OCI in satisfaction of a lien against or a subrogation interest in money the members or insureds had received or would receive from a third party. There are multiple commonalities between the putative class members. Plaintiff alleges that Defendant collected money from third-party recoveries in violation of Md. Code Ann., Health-Gen. §§ 19-701 *et seq.* Because each putative class member must show that OCI is

---

[5] In *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138 (4th Cir. 2001), the Fourth Circuit stated that "[i]n a class action brought under Rule 23(b)(3), the "commonality" requirement of Rule 23(a)(2) is 'subsumed under, or  superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Id.* at 146 n.4 (quoting *Amchem Prods.*, 521 U.S. at 609. Plaintiff seeks to certify this class pursuant to Rule 23(b)(3). Even if Plaintiff meets the commonality standard of Rule 23(a)(2), she still must meet the more burdensome standard articulated in Rule 23(b)(3).

subject to the statute, and that OCI asserted and collected a subrogation claim in violation of the statute, there are questions of law and fact common to the class, and Plaintiff has met the commonality requirement of Rule 23(a)(2).[6]

## 3.  Typicality

Class certification requires that "the claims and defenses of the representative parties are typical of the claims and defenses of the class." Fed.R.Civ.P. 23(a)(3).  The typicality requirement, oft criticized as "redundant" to the commonality requirement, focuses on "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  *Hewlett*, 185 F.R.D. at 217.  A plaintiff's claim may factually differ and still be "typical" of class member claims, if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *Id.* (internal quotation marks omitted).

Plaintiff's claim is typical of that of the class.  Ms. Miller was a participant within the meaning of ERISA § 3(7), 29 U.S.C. §

---

[6]  In its opposition memorandum, Defendant does not specifically challenge Plaintiff's assertion that the commonality standard of Rule 23(a)(2) is met.  Instead, Defendant asserts that Plaintiff cannot show that common factors *predominate*, which is required pursuant to the more stringent Rule 23(b)(3) standard under which Plaintiff seeks to certify the class.  *See* discussion *infra*, pp. 15-19.

1002(7), in OCI's HMO plan.  Ms. Miller was in an accident, and obtained medical treatment through OCI.  She received a settlement of $2,500 from a third party, from which OCI collected $532.62 as a subrogation claim.  Like Ms. Miller, the putative class members' claims all arise from the billing practices of OCI, based on the theory that subrogation claims against HMO members violate Maryland's HMO statute.

Defendant argues, unconvincingly, that although "many putative class claims in this case would be for relatively small amounts of money, like [Ms. Miller's] claim," Ms. Miller is not "typical" because some class members may have much higher claims.  (Paper 78, at 11).  Defendant notes that "OCI's subrogation recoveries during the period covered by the Fourth Amended Complaint include at least two dramatically larger individual recoveries - one for $1 million and the other for a net amount of $375,000."  *Id*.  Defendant admits, however, in a footnote, that it has reason to believe that "one or possibly both of the claimants [with the large recoveries] were members of a self-funded ERISA plan and therefore would be excluded from the putative class in any event."  *Id*. at 11 n.5. The fact that damage amounts may not absolutely be uniform and the mere speculation that there could be claims for much larger damage amounts does not mean that Ms. Miller's claims are not typical and is not sufficient to bar certification.

**4.   Adequacy of Representation**

In *Hewlett*, 185 F.R.D. at 218, this court stated:

> Rule 23(a)(4) requires the class representatives to be in a position to protect fairly and adequately the interests of the class. Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation. *Buford* [*v. H & R Block, Inc.*], 168 F.R.D. [340] at 351 [(S.D.Ga. 1996)] (citing *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)); *Zapata* [*v. IBP, Inc.*], 167 F.R.D. [147] at 160 (citing [*Gen. Tel. Co. of Southwest v.*] *Falcon*, 457 U.S. [147] at 157 n.13 [(1982)]).

> In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class. *Zapata*, 167 F.R.D. at 161.

Defendant challenges the adequacy of both class counsel and Ms. Miller. With regard to class counsel, Defendant does not contest counsel's ability or qualifications, but instead argues that the role of one of the class attorneys in handling the initial tort settlements of some putative class members creates a conflict of interest that renders class counsel inadequate. Although somewhat difficult to follow, Defendant appears to assert the following:

> • In her tort action, Ms. Popoola was represented by an attorney from Greenberg & Bederman, LLP. In that action,

11

       Greenberg & Bederman agreed to represent
the interests of MAMSI in the settlement
in exchange for a 25% reduction in the
amount of subrogation Ms. Popoola paid.

- Robert K. Jenner is one of the counsel
  for Ms. Miller in this action.

- When this action was filed in May 2000,
  Mr. Jenner was an attorney with Greenberg
  & Bederman.

- Mr. Jenner is now an attorney with Janet,
  Jenner & Suggs, LLC, which serves as one
  of the firms representing Ms. Miller and
  members of the putative class.

- Because Mr. Jenner has or has had an
  active plaintiffs' personal injury
  practice, it is likely that the same
  circumstances exist with respect to other
  putative class members and possibly other
  of the plaintiff's counsel in this
  action.

Defendant maintains that this situation impairs class counsel
because: (1) there is a potential for disqualification of one or
more of the firms representing Ms. Miller; and (2) to the extent
that class counsel "fights off these issues, it presents a clear
conflict between the interests of any individual claimant whom
[counsel] represented in prior tort actions and the interests of
those they did not represent." (Paper 78, at 16).

     Plaintiff maintains that there is no conflict of interest and
that counsel is adequate. First, Plaintiff asserts that there are
five attorneys from four different firms representing Ms. Miller
and the class, and that Defendant takes issue with only one firm,
and only one lawyer, Mr. Jenner. Plaintiff argues that even

assuming Mr. Jenner was disqualified, there remain four other qualified attorneys from three different firms to handle the case. Plaintiff maintains that Mr. Jenner was not a member of Greenberg & Bederman at the time Ms. Popoola paid MAMSI's subrogation lien. Plaintiff states that "if there ever was a conflict of interest, it would have been with Greenberg & Bederman when it was listed as Plaintiff's counsel," but that Greenberg & Bederman are no longer representing Ms. Miller or the class in this case.   The court agrees with Plaintiff.   Although it does not appear that there is a conflict of interest with regard to Mr. Jenner's representation, even assuming that a conflict was later found to exist, there remain four attorneys from three other firms to represent Plaintiff and the class.   Defendant does not dispute the qualifications of these other attorneys.   Accordingly, the court finds that counsel is adequate to represent Plaintiff and the class.

In addition, Defendant indirectly challenges the adequacy of Ms. Miller as the class representative within the section of its opposition memorandum discussing the typicality factor.   Defendant states that potential class claimants with very large claims "are unlikely to be satisfied that Ms. Miller, with her much smaller claim, will represent their interests adequately." (Paper 78, at 12).   As noted, Defendant concedes that at least one and most likely both of the large-recovery claimants were members of self-funded ERISA plans and therefore would be excluded from the class.

13

Defendant's speculation that there *may* be some claimants with very large recoveries and that these individuals *may* feel that their interests are not adequately represented is insufficient to find that Ms. Miller is an inadequate representative.   Moreover, Plaintiff rightfully points out that to the extent that a large-recovery plaintiff who fell within the class definition felt that Ms. Miller was inadequate, pursuant to Fed.R.Civ.P 23(c)(2)(B) he or she would have the opportunity to opt out of the class and assert an individual cause of action.

Accordingly, the court finds that Plaintiff meets the requirements of Rule 23(a).

**B.   Rule 23(b)(3)**

Plaintiff seeks certification pursuant to Fed.R.Civ.P. 23(b)(3).   The rule requires that:

> The court finds that questions of law or fact
> common to the members of the class predominate
> over any questions affecting only individual
> members and that a class action is superior to
> the other available methods for the fair and
> efficient adjudication of the controversy.

The requirements of Rule 23(b)(3) are commonly referred to as "predominance" and "superiority." *Hewlett*, 185 F.R.D. at 219.   In *Buford*, 168 F.R.D. 340, the court noted:

> "Although easy to state, these prerequisites
> become rather opaque when an attempt is made
> to apply them . . . . The truth is that if one
> reads fifty or even a hundred cases involving
> predominance and superiority, a clear picture
> of what is happening under Rule 23(b)(3) does
> not emerge.  A Da Vinci or Michaelangelo could

14

> not draw a straight line through the
> subdivision (b)(3) cases."

*Id*. at 355 (quoting Miller, *An Overview of Federal Class Actions*
48).

## 1. **Predominance**

Defendant makes several arguments as to why Plaintiff fails to
show that common questions of law or fact predominate.  First,
Defendant asserts that Plaintiff's class definition still suffers
from the same flaw that Judge Scrivener noted in the earlier denial
of certification – that the class as defined includes claimants who
have both HMO and POS (i.e., indemnity) coverage, and not only
those who have HMO plans.[7]  Defendant maintains that the class, as
currently proposed, may include members of OCI who also had a POS
component to their health coverage.  Although it is not entirely
clear, Defendant appears to assert that the POS component in these
cases would be offered by a separate entity (i.e., that the
claimant had HMO coverage from OCI and POS coverage through another
entity).[8]  Plaintiff, who describes the situation as one where OCI

---

[7] Judge Scrivener first addressed this issue in the context of
the typicality requirement, and found that Ms. Popoola was not
"typical of the class, because she [had] this funny dichotomy
coverage" that included both HMO and POS services.  (Paper 75, ex.
1, at 94).  Judge Scrivener also found that the dual coverage issue
resulted in individual issues predominating over common issues.
*Id*.  Ms. Miller was substituted for Ms. Popoola and there is no
evidence that she had a POS component to her benefits plan.

[8] This comports with Ms. Popoola's situation; she received HMO
services from MDIPA, and the POS component through MAMSI.

may offer both HMO and POS services, argues that OCI is an HMO
within the meaning of Maryland's HMO statute, and, to the extent
that a putative class member made subrogation payments to OCI, for
HMO or any other services (e.g., POS-related services), those
payments violated the HMO statute.   Plaintiff contends that the
prohibition against subrogation payments articulated in *Riemer v.
Columbia Med. Plan, Inc.*, 358 Md. 222 (2000), is based on an
entity's status as a statutorily defined HMO, and thus, regardless
of what services it provides, the entity is still an HMO and cannot
seek subrogation payments.

Although the court is unclear as to how the POS services were
provided (through OCI or through a separate entity), the
determination is not necessary to the court's decision with regard
to class certification.   To the extent that a putative class member
received HMO services through OCI and POS services through another
separate entity, the distinction is important only for purposes of
calculating damages (i.e., the amounts paid only to OCI are
recoverable).   If OCI rendered both HMO and POS services, a common
issue exists as to whether, under *Riemer*, a putative class member
can recover from OCI for both services, or, alternatively, whether
subrogation payments to OCI for POS services are valid.   To the
extent that a claimant's recovery is limited to payment for the HMO
services that were provided, the claimant's damages will be reduced
by the amount of the POS services.   Under either scenario, the need

16

for individualized damage calculations as to the amount of the illegal subrogation payment does not prevent Plaintiff from meeting the predominance inquiry of Rule 23(b)(3). *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428-30 (4th Cir. 2003), *cert. denied*, 542 U.S. 915 (2004) (noting that "Rule 23 explicitly envisions class actions with such individualized damage determinations" and that actions for money damages under Rule 23(b)(3) usually require such individualized inquiries, and concluding that the district court's decision to certify the class was correct, despite the fact that the plaintiffs' damage claims included "injury to credit, time lost, and loss of enjoyment of life," which may require individualized inquiry).

Second, Defendant asserts that the existence of multiple affirmative defenses, such as waiver and estoppel, the voluntary payment doctrine, and accord and satisfaction, prevents a finding that common issues predominate. Plaintiff counters that Defendant's affirmative defenses are based on state common law and are inapplicable with regard to ERISA claims and that even if the defenses are applicable, they fail under state law. Plaintiff also argues that, notwithstanding the merits inquiry, to the extent that the affirmative defenses are relevant, they are common to the class. Defendant does not argue that the affirmative defenses it asserts require individual inquiry, but instead implies that the defenses are equally applicable across the putative class. For

example, Defendant states that "[c]laimants like Ms. Miller generally made these payments voluntarily, with the benefit of representation by counsel, and in compromise of larger amounts claimed to be owed." (Paper 78, at 8). Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members. *See Smilow v. Southwestern Bell Mobile Sys.*, 323 F.3d 32, 39-40 (1st Cir. 2003) (noting that the court should consider affirmative defenses common to all putative class members in determining whether to certify the class and noting that if "evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms" to resolve the issue).

Third, Defendant argues that the decision of the Maryland Court of Appeals in *Creveling v. Gov't Employees Ins. Co.*, 376 Md. 72, 92-94 (2003), prohibits class certification because *Creveling* held that "a class cannot be certified where the only common issue asserted is a question of law already resolved by the Court of Appeals." (Paper 78, at 12). In *Creveling*, the court held that where previous litigation *conclusively* determined that a defendant's former practice was illegal, the defendant *conceded* it was liable, and there were *no other* common questions of fact or law

18

at issue, the plaintiffs could not meet the commonality requirement for class certification. *Creveling*, 376 Md. at 92-94. Here, Defendant does not concede that *Riemer* prohibited it from collecting subrogation payments. Instead, Defendant asserts multiple affirmative defenses as to why its actions were proper. Accordingly, Defendant shows through its own actions that, unlike in *Creveling*, liability in this case is not *conclusive*. Moreover, there are other common questions at issue, including, e.g., whether OCI is entitled to subrogation payment for POS services it provided, and whether Defendant's affirmative defenses are applicable in the context of ERISA.

## 2. Superiority

Rule 23(b)(3) requires that the "class action is superior to other available methods of fair and efficient adjudication of the controversy." The rule lists four factors for the court to consider in making this determination: (1) the interest of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in management of a class action. Fed.R.Civ.P. 23(b)(3).

19

Here, the class action method is superior to other methods of adjudication.[9]   First, although there are a large number of potential claimants, the individual damage claims (i.e., the amount of each subrogation payment) generally appear to be modest.   Thus, it is unlikely that any individual claimant would sue for damages and that the class action is the only realistic and practical way that individual class members will obtain relief.   Second, with regard to pending litigation, Plaintiff asserts that it has no knowledge of any pending cases; Defendant does not dispute this assertion.   Therefore, there is no risk of inconsistent adjudications were the case to proceed as a class action.   Third, litigation in the District of Maryland is desirable where Plaintiff alleges that a Maryland HMO collected payments from its members in violation of a Maryland statute, and where the putative class members are likely to be close in geographic proximity.   Fourth, there are no apparent management difficulties that will likely be encountered here.   The class members are geographically homogenous and are readily identifiable from Defendant's records.   In addition, the issue appears to be straightforward and limited. Plaintiff asserts that Defendant collected subrogation money from claimants in violation of Maryland's HMO law.   There is also no reason to believe that calculating damages for each claimant would produce management difficulties because the amount of damages would

_____

[9] Defendant does not contest this issue.

20

equal the subrogation payment to OCI, which is documented.[10]

Accordingly, the class action mechanism provides a superior method of adjudication.

### III.  Conclusion

For the reasons stated, the court will grant Plaintiff's motion for class certification.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[10] To the extent that the court found that payments for POS services were properly collected, the damage amounts for a claimant with both HMO and POS components to their health plan would be reduced by the amount of the subrogation claim paid for POS services rendered in connection with the injury at issue.